SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| · CV12777316 | D1 CM | 19035310 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

**SUMMONS**

 REC'D VIA
CERTIFIED MAIL
C-MWF 3/20/2012

| SOLOMON ALEXANDER | PLAINTIFF |
|---|---|
| VS | |
| MID-WEST FORGE, INC. | DEFENDANT |

MID-WEST FORGE INC.
17301 ST. CLAIR AVENUE
CLEVELAND OH 44110-0000

You have been named defendant in a complaint
(copy attached hereto) filed in Cuyahoga County
Court of Common Pleas, Cuyahoga County Justice
Center, Cleveland, Ohio 44113, by the plaintiff
named herein.

You are hereby summoned and required to
answer the complaint within 28 days after service
of this summons upon you, exclusive of the day of
service.

Said answer is required to be served on:

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

**Plaintiff's Attorney**

BRIAN D SPITZ
4568 MAYFIELD ROAD, SUITE 102

SOUTH EUCLID, OH 44121-0000

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

EILEEN T GALLAGHER
Do not contact judge. Judge's name is given for
attorney's reference only.

GERALD E. FUERST
Clerk of the Court of Common Pleas

| DATE |
|---|
| Mar 9, 2012 |

By _____
Deputy

COMPLAINT FILED   03/05/2012



CMSN130

**EXHIBIT**
**1**

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| SOLOMON ALEXANDER<br>1170 Hayden Avenue, Apt# 1<br>Cleveland, Ohio 44110 )<br><br>Plaintiff, )<br><br>v. )<br><br>MID-WEST FORGE, INC. )<br>17301 St. Clair Avenue )<br>Cleveland, Ohio 44110 )<br><br>Defendant. ) | Judge: EILEEN T GALLAGHER<br><br>CV 12 777316<br><br><br>**COMPLAINT**<br><br>(Jury Demand Endorsed Hereon) |

Plaintiff Solomon Alexander ("Alexander"), by and through undersigned counsel, as his Complaint against Defendants, states and avers the following:

## PARTIES & VENUE

1. Alexander is a resident of the City of Cleveland, County of Cuyahoga, State of Ohio.

2. Mid-West Forge, Inc. ("MWF") is a corporation headquartered in the City of Cleveland, County of Cuyahoga, State of Ohio.

3. MWF operates a manufacturing facility as its primary place of business located at 17301 St. Clair Avenue, in the City of Cleveland, County of Cuyahoga, State of Ohio.

4. All of the material events and damages alleged herein occurred in the City of Cleveland, County of Cuyahoga, State of Ohio.

5. Therefore, venue is proper.

## FACTS

6. In October of 2010, Alexander was hired by MWF as a Forging Operator.

7. As part of his job duties as a Forging Operator, Alexander was in charge of operating and maintaining MWF's Manual Upsetter, a machine used in the forging of automotive parts.



8. Upon being assigned to operate and maintain MWF's Manual Upsetter, Alexander was told by several fellow employees that the Manual Upsetter was a dangerous machine.

9. The operation and maintenance of the Manual Upsetter routinely required Alexander to physically squeeze inside the Manual Upsetter to change out removable parts used to form various automotive parts ("Punches").

10. On or about March 29, 2011, Alexander injured his back, in the course and scope of his employment, while he removed and replaced Punches within the Manual Upsetter.

11. After his March 29, 2011 injury, Alexander properly and timely filed a Workers' Compensation Claim, Ohio Bureau of Workers' Compensation Claim No. 11-814176 ("First Claim").

12. MWF challenged Alexander's First Claim.

13. Following his March 29, 2011 injury, Alexander timely called off work for time needed to treat his work-related injury on May 13, 2011.

14. Following his March 29, 2011 injury, Alexander timely called off work for time needed to treat his work-related injury on May 16, 2011.

15. Following his March 29, 2011 injury, Alexander timely called off work for time needed to treat his work-related injury on May 27, 2011.

16. Following his March 29, 2011 injury, Alexander called off work for time needed to treat his work-related injury on May 31, 2011.

17. Following his March 29, 2011 injury, Alexander timely called off work for time needed to treat his work-related injury on June 27, 2011.

18. During May and June 2011, Alexander began experiencing intense pain and swelling in his hands, caused by the violent vibrations of the Manual Upsetter, in the course and scope of his employment.



19. While treating his March 29, 2011 injury, Alexander explained his hand symptoms to his physician.

20. Upon being put on notice of Alexander's hand symptoms, Alexander's physician recommended that he request a transfer to another manufacturing department and/or machine.

21. In July of 2011, Alexander provided his supervisor, David Erslick ("Erslick"), with a written note explaining his symptoms, complaining about the violent vibrations of the Manual Upsetter, and requesting that he be transferred to another manufacturing department and/or machine.

22. After receiving Alexander's written request, Erslick laughed at Alexander's request and refused to address Alexander's complaint.

23. Following his March 29, 2011, injury and his worsening hand symptoms, Alexander timely called off work for time needed to treat his work-related injury on August 12, 2011.

24. On August 15, 2011, MWF served Alexander with written notice ("Notice") that he had exceeded MWF's allowable "Points" allocated to employees for calling off work.

25. As part of the Notice, MWF informed Alexander that, as a result of his absences, he would be suspended from work on August 16 and August 17, 2011, without pay.

26. After he received the Notice, Alexander met with the President of MWF, Jerry Newman, his Union President, Darrell Irving, and a member of MWF's Human Resources Department, Jim Rackey ("Meeting Participants"), to explain that his absence were necessary to address the injury he received in the course and scope of his employment ("Meeting").

27. During the Meeting, Alexander explained to the Meeting Participants that he did not feel he should receive points for treating an injury he received during the course and scope of his employment.

3



28. At the end of the Meeting, the Meeting Participants agreed with Alexander's position and told him that he would no longer receive points for time missed from work to treat his work-related injury.

29. At the end of the Meeting, Alexander accepted the oral assurances from the Meeting Participants and returned to work.

30. After the Meeting, Alexander's hand symptoms began to worsen.

31. On August 25, 2011, as a result of his heightened hand symptoms, Alexander properly and timely filed a Workers' Compensation Claim, Ohio Bureau of Workers' Compensation Claim No. 11-346286 ("Second Claim").

32. MWF challenged Alexander's Second Claim.

33. In early September 2011, Alexander scheduled several doctor's appointments to address his hand symptoms as well as to continue treatment of his March 29, 2011 injury ("September Appointments").

34. In early September 2011, Alexander timely called off work to attend the September Appointments.

35. In response to Alexander's calling off work to attend the September Appointments, MWF added points to Alexander's record ("September Points").

36. As a result of the September Points being added to his record, Alexander exceeded the annual points allowable for MWF employees, and MWF terminated his employment on September 15, 2011.

37. Alexander's termination occurred less than three weeks after he filed the Second Claim.

38. In adding the September Points to his record, MWF breached the oral contract that the Meeting Participants made with Alexander during the Meeting.

4



39. In terminating Alexander, MWF breached the oral contract that the Meeting Participants made with Alexander during the Meeting.

40. In terminating Alexander, MWF did not properly follow the progressive disciplinary system and/or perverted that system.

41. MWF created a pretextual basis for terminating Alexander.

42. In a handwritten letter to MWF, Alexander asked for his job back because he should not have been fired for filing Workers' Compensation Claims, and that he would pursue such a claim if not reinstated.

43. A copy of the handwritten letter is not attached because MWF is in sole possession of the document.

44. After Alexander's termination, he appealed the denial of his Second Claim.

45. During the appeals process of his Second Claim, Alexander explained that he was terminated in retaliation for filing his First and Second Claims.

46. During the appeals process of his Second Claim, Alexander provided MWF with written notice of his intent to pursue a Workers' Compensation retaliation claim.

## COUNT I: WORKER'S COMPENSATION RETALIATION

47. Alexander restates each and every prior paragraph of this complaint, as if it were fully restated herein.

48. On or about March 29, 2011, Alexander was injured on the job at while working for MWF.

49. Alexander was an employee of MWF at the time of the injury.

50. Following his March 29, 2011 injury, Alexander filed a Workers' Compensation claim.

51. On or about August 25, 2011, Alexander was once again injured on the job while working for MWF.

52. Alexander was an employee of MWF at the time of the injury.



53. Following his August 25, 2011 injury, Alexander filed a second Workers' Compensation claim.

54. There was a causal connection between Alexander's filing of his Workers' Compensation claims and the punitive action taken against him by MWF.

55. There was a causal connection between Alexander's filing of his Workers' Compensation claims and his termination.

56. Alexander provided MWF with written notice of his intent to pursue a Worker's Compensation retaliation claim within 90 days of the end of his employment.

57. MWF violated Ohio Revised Code § 4123.90 by retaliating against Alexander for his timely and rightful filing of his two Workers' Compensation claims.

58. As a direct and proximate cause of MWF's conduct Alexander was caused to suffer and will continue to suffer significant damages.

## COUNT II: BREACH OF ORAL CONTRACT

59. Alexander restates each and every prior paragraph of this complaint, as if it were fully restated herein.

60. During the Meeting, the Meeting Participants orally contracted with Alexander to refrain from adding points to his employment record for work missed as a result of Alexander's treating his work-related injuries.

61. During the Meeting, Alexander agreed to the terms of the Meeting Participants' oral contract.

62. Following the Meeting, Alexander relied upon the terms of the Meeting Participants' oral contract and scheduled the September Appointments.

63. After Alexander called off work to attend the September Appointments, MWF breached the terms of the Meeting Participants' oral contract when it added the September Points to Alexander's employment record.



64. As a direct and proximate cause of MWF's breach of the Meeting Participants' oral contract Alexander was caused to suffer and will continue to suffer significant damages.

## COUNT III: PROMISSORY ESTOPPEL

65. Alexander restates each and every prior paragraph of this complaint, as if it were fully restated herein.

66. During the Meeting, the Meeting Participants represented to Alexander that MWF would refrain from adding points to his employment record for work missed as a result of Alexander's treating his work-related injuries.

67. Following the Meeting, Alexander actually and reasonably relied upon the Meeting Participants' representations and assurances, as evidenced by his scheduling of the September Appointments.

68. After Alexander called off work to attend the September Appointments, MWF terminated Alexander's employment.

69. As a direct and proximate cause of MWF's acts or omissions as set forth above, Alexander was caused to suffer and will continue to suffer significant damages.

## COUNT IV: INTENTIONAL TORT

70. Alexander restates each and every prior paragraph of this complaint, as if it were fully restated herein.

71. During his employment with MWF, Alexander developed severe hand pain and swelling directly resulting from his operation of the Manual Upsetter.

72. Alexander provided Erslick with a written complaint explaining his hand symptoms and requesting he be transferred to another manufacturing department and/or machine.

73. Despite Alexander's complaint and written request, MWF forced him to continue working on a machine that MWF knew caused Alexander injury.



74. MWF intended to cause Alexander continued injury and physical discomfort by neglecting to address his complaints and continuing to force him to operate the Manual Upsetter.

75. As a direct and proximate cause of MWF's acts or omissions as set forth above, Alexander was caused to suffer and will continue to suffer significant damages.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

76. Alexander restates each and every prior paragraph of this complaint, as if it were fully restated herein.

77. MWF intended to cause Alexander emotional distress, or knew that their acts or omissions would result in serious emotional distress to Alexander.

78. MWF's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

79. As a direct and proximate result of MWF's acts and omissions, Alexander has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

## DEMAND FOR RELIEF

WHEREFORE, Alexander demands from MWF the following:

> (a) An award against MWF of compensatory and monetary damages to compensate Alexander for emotional distress, personal injury, lost wages, lost employment benefits, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

> (b) An award against MWF of liquidated damages equal to the amount of compensatory damages to be proven at trial;



(c) An award against MWF of punitive damages in excess of $25,000 to be proven at

    trial;

(d) An award of reasonable attorneys' fees and non-taxable costs for Alexander's claims

    as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

                Respectfully submitted,

                Brian D. Spitz (0068816)
                Andrew S. Haring (0087213)
                **THE SPITZ LAW FIRM, LLC**
                4568 Mayfield Road, Suite 102
                South Euclid, Ohio 44121
                Phone: (216) 291-4744
                Fax:    (216) 291-5744
                Email: Brian.Spitz@SpitzLawFirm.com
                        Andrew.Haring@SpitzLawFirm.com

                *Attorneys for Plaintiff Solomon Alexander*



## JURY DEMAND

Plaintiff Solomon Alexander demands a trial by jury by the maximum number of jurors permitted.

Brian D. Spitz (0068816)
Andrew S. Haring (0087213)
THE SPITZ LAW FIRM, LLC

